THOMAS WIGHT *et al.*

*v.*

DANIEL GARDNER.

1. CONTRACT FOR SALE OF GRAIN—*effect of tender and refusal upon rights of purchaser.* Where, by the terms of a contract for the sale and delivery of grain, the seller had the option of fixing the time of delivery at any time before the end of the year, and exercised such option within the time allowed, by tendering warehouse receipts for the grain, at the rooms of the board of trade, and offering to make the tender at the purchaser's office if he would state where it was, and by giving notice at the same

time that, if he refused, the seller would terminate the contract, which was refused: *Held*, that, by such tender or offer to perform, and refusal, the purchaser ceased to have the right to insist upon the agreement, and could not maintain an action for the non-performance of the contract.

2. TENDER—*waiver of objection as to the place where made.* Where a tender of warehouse receipts for grain was made by the seller to the purchaser at the board of trade, with an offer to tender the same at the purchaser's office, if he would state where it was, which tender was refused without assigning any reason, or stating the place of his office, or requiring the offer to perform to be made there: *Held*, that the tender was sufficient, and the refusal obviated the necessity of a tender at the office of the purchaser.

3. An offer to perform is not necessary where the other party dispenses with it; and where a purchaser of grain, when offered warehouse receipts for the same, insisted upon settling the matter by an unauthorized resolution of the board of trade, his not accepting the receipts, when offered, without making any objection to their character or assigning any reason for his refusal, requiring something further to be done, it was held to dispense with any further offer to perform at a different place by the seller, to entitle him to terminate the contract.

4. SAME—*of receipts for grain conditionally purchased.* Where a party, who had agreed to sell and deliver a certain quantity of grain, made a tender of warehouse receipts of the grain: *Held*, that the fact of the seller having bought the receipts upon condition the purchaser accepted them, could not be urged against the tender. It was enough that they would have been absolutely his had he accepted them.

5. SAME—*not necessary to keep tender good, in case of a contract of sale.* Where a tender is not made to discharge a debt, but in performance of a contract to deliver property to a purchaser in compliance with the terms of an agreement, and it is refused, it is not necessary to keep the tender good, but the party tendering may declare the contract at an end, and the seller may dispose of it afterwards as he chooses.

6. CONTRACT FOR SALE—*rights of parties after its termination by seller for fault of buyer.* As personal property does not vest in the purchaser by an executory contract, when it is terminated by the seller on account of the purchaser refusing to accept and pay for the same, the purchaser has no subsequent right to demand and compel a delivery, nor has the seller thereafter any right to tender and compel the buyer to receive. In such a case, the purchaser loses all right to claim the property or any interest therein, and the seller may recover damages for the breach of the contract.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. DENT & BLACK, for the appellants.

Messrs. HITCHCOCK, DUPEE & EVARTS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It is conceded that, by the terms of the contract, appellants had the balance of the year 1871 to exercise the option to deliver the grain; and they claim that they exercised the option on the 24th of October, and on that day tendered 10,000 bushels of wheat, of the grade and in full compliance with the terms of the agreement. The tender claimed to have been made was with warehouse receipts for the quantity and quality of wheat in store as called for by the contract. Appellee failed to receive the grain, and claims the offer or tender then made left the contract open as before, and appellants never afterwards having performed the agreement, that he is entitled to recover damages for a breach of the contract.

It appears that, soon after the fire of the 9th of October, the board of trade adopted an order that all outstanding contracts for number two spring wheat between members of the board should be settled at the prices of such grain on the previous Saturday; but both parties concede that this order was unauthorized and was not binding; and the parties, after the fire, had several interviews in reference to this contract, in the first of which appellee seems to have been inclined to treat the contract as unaffected by the resolution of the board of trade, but subsequently insisted that they should settle on the terms of that resolution; and on the 24th of October, 1871, appellants, in the rooms of the board of trade, tendered to appellee warehouse receipts for 10,000 bushels of spring wheat, of the quality called for by the contract, and he refused to receive it, but, at the time, assigned no reason for doing so, as he contends, whilst Wight swears appellee said he was amenable to the board of trade for his acts. Wight further swears that he offered to tender the receipts at appellee's office, if he would state where it was.

This clearly shows that appellants offered to perform their contract within the time and according to the terms of the agreement. They had the option within the year to fix the time of delivery, and they exercised it on the 24th of October, when they were ready and offered to deliver the grain; and appellee would not then accept and pay for it; and, inasmuch as appellee had previously, on several occasions, insisted upon settling according to the resolution of the board of trade, and had not, after their first interview, manifested any willingness to receive the grain, and none when the tender was made, when notified that if he refused, the contract would be terminated as to appellee, we think that appellee then ceased to have the right to insist upon the agreement. If willing to receive and pay for the grain, he should have said so; and if he desired to arrange the matter at his office, he should have so stated; and when informed that the contract would be terminated unless he then accepted the wheat receipts, he, if desirous of enforcing the contract, should have objected. On the contrary, he assigns no reason for the refusal; does not say where his office is, or require the offer to perform to be made there; nor did he express the slightest objection to the termination of his right to demand the grain. This was sufficient to terminate his right under the contract to recover for a breach of the agreement in not delivering the grain.

Had appellee manifested a willingness previously, and not insisted upon settling according to the resolution of the board of trade, or had he insisted that the offer to perform should have been made at his office, then it might be that what appellants did would not amount to such an offer of performance as would have released them from delivering the grain. An offer to perform is not necessary where the other party dispenses with it; and in this case, when we see appellee insisting upon settling by the resolution of the board of trade, his not accepting the receipts when offered, without any objection to their character, and assigning no reason for refusing,

7—66TH ILL.

requiring nothing farther to be done, and interposing no objection to the termination of his right to claim the wheat under the contract, we think he dispensed with the necessity of any further offer to perform, and authorized appellants to treat his right to claim the grain under the contract as terminated.

It does not matter that the purchase of the warehouse receipts by appellants was conditional that they would be accepted by appellee. It is enough that had he accepted them, they would have become absolutely his. Appellants had obtained them for the purpose, without fraud, and had the legal right to deliver them to and vest the title in appellee; and it does not concern him to know in what manner appellants would settle with those of whom they obtained them; nor was it requisite that appellants should have kept the tender good. It was not made to discharge a debt, but in performance of a contract to deliver property to a purchaser. In such cases, where the offer is made in compliance with the terms of the agreement, and it is refused, the person tendering may declare the agreement at an end, and all claim to the property, or to have it delivered, by the purchaser, ceases, and the seller may dispose of it as he chooses. The property does not vest in the purchaser by an executory contract; and when it is terminated, the purchaser has no subsequent right to demand and compel a delivery of the property; nor has the seller thereafter any right to tender and compel the buyer to receive it. In such a case, the purchaser loses all right to claim the property or any interest therein, and the seller may recover damages for the breach of the contract.

In this case, the evidence fails to show a right of recovery by appellee, and the judgment of the court below is reversed.

*Judgment reversed.*