## Simon Kruse, who sues as well for the County of Cook and State of Illinois as for himself, v. Francis J. Kennett et al.

1. PENAL STATUTES—*Are Strictly Construed.*—Penal statutes are strictly construed, and where a suit is brought under such a statute the plaintiff, to maintain his action, must make a case clearly within the provisions of the statute he invokes.

2. SAME—*Application of Section 132 of the Criminal Code.*—Section 132 of the Criminal Code, relating to gambling and the recovery of money lost at, does not cover the offenses mentioned in section 130 of said Code. A specific penalty is provided for the misdemeanors mentioned in the latter section.

Qui tam Action.—Error to the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the March term, 1897. Affirmed. Opinion filed March 29, 1897.

## STATEMENT OF THE CASE.

This was a *qui tam* action brought by the plaintiff in error, who sued as well for the county of Cook as for himself, against defendants in error, doing business as Kennett, Hopkins & Co.; to recover three times the amount of money alleged to have been lost in gambling. The declaration consists of three special counts, and is in substance as follows:

" For that, whereas, the defendants heretofore, to wit: on the 7th day of September, A. D. 1893, at the city of Chicago, county of Cook and State of Illinois, were engaged, under the firm name of Kennett, Hopkins & Co., in the business of gambling in grain and in wagering and betting on the market price of grain at a future time; and, whereas, the said defendants made an agreement with one J. Q. Savage that they, the said defendants, would, from time to time, as the brokers of said J. Q. Savage, but in their own, the defendants' name, enter into contracts with divers persons for the purchase and sale of grain for future delivery, and that there should be no delivery of the grain so purchased or sold, and that it was then and there further agreed and understood by and between said defendants and the said J. Q. Savage, that the said J. Q. Savage should not be called upon or required to receive, deliver or pay for any of the grain that might be so purchased or sold by the said defendants for the account of the said J. Q. Savage; that all of the contracts that might be made by the said defendants for the purchase or sale of grain as aforesaid, should be settled before the time for delivery arrived, by the payment or receipt of the difference between the price at which the grain was or might be bought or sold and the market price of like grain for like delivery at the time of settlement, and that all such transactions and deals in grain should be settled upon differences as indicated and determined by the fluctuation of the market; and that plaintiff says that it was then and there further agreed and understood by and between the said defendants and the said J. Q. Savage that the defendants should, from time to time, as the brokers of

said J. Q. Savage, but in their, the defendants' own name, make contracts to have and to give to themselves the option to sell and buy grain at a future time.

And that in pursuance of the aforesaid arrangement, agreement and understanding, and as the brokers of the said J. Q. Savage, the said defendants, not regarding the statute in such case made and provided, did heretofore, to wit, on the 7th day of September, A. D. 1893, at Chicago, aforesaid, enter into contracts for the purchase and sale of a large amount of grain, to wit, one million bushels of wheat and fifty thousand bushels of corn for delivery at a future time, and that before the maturity of any of said contracts, all of said deals and transactions in grain were closed and settled by the payment or receipt of differences and that no grain was delivered on said contract.

And that in pursuance of the aforesaid agreement and understanding, and of brokers of the said J. Q. Savage, the said defendants not regarding the statute in such case made and provided, did heretofore, to wit, on the 7th day of September, 1893, at Chicago aforesaid, enter into contracts in their own name, to have and to give to themselves the option to sell and buy at a future time a large quantity of grain, to wit, 100,000 bushels of wheat, and 100,000 bushels of corn.

And that for the purpose of reimbursing and indemnifying the said defendants against losses, which they had or might sustain by reason of the deals and transactions aforesaid, the said J. Q. Savage as J. Q. Savage, A. N. Knapp, Higbee & Savage, McIntosh & Savage, N. L. Stewart, and Savage & Forsythe, did heretofore, to wit, on the 7th day of September, A. D. 1893, at Chicago, aforesaid, pay to the said defendants a large sum of money, to wit, the sum of $6,000, being money then and there lost and paid by the said J. Q. Savage to the said defendants at one and the same time exceeding the amount of $10, and by the said defendants then and there won of and from the said J. Q. Savage, by wagering and betting on an unknown and contingent event, to wit, on the market price of grain at a future time,

contrary to the form of the statute in such case made and provided, and the plaintiff says that the said J. Q. Savage did not within six months from the time he lost and paid said several sums of money as aforesaid, bring suit to recover the same or any part thereof, whereby, and by force of the statute, to wit, section 132 of chapter 38 of the Revised Statutes of the State of Illinois, an action had accrued to the said plaintiff to have and recover of and from the said defendants as well for the said county of Cook, as for himself, the sum of $18,000; being treble the amount in value of the said several sums of money lost and paid by the said J. Q. Savage to the said defendants as aforesaid."

The defendants in error filed a general and special demurrer, to each count of said declaration, the court below sustained said demurrer, and the plaintiff electing to abide by said declaration, judgment was rendered against the plaintiff for costs, from which judgment this writ of error is prosecuted.

FOSTER & KRUSE, attorneys for plaintiff in error.

WALTER S. HULL, attorney for defendants in error.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

Section 130 of the Criminal Code of this State is as follows:

" Whoever contracts to have or give to himself or another the option to sell or buy at a future time, any grain, or other commodity, stock of any railroad or other company, or gold, or forestalls the market by spreading false rumors to influence the price of commodities therein, or corners the market, or attempts to do so in relation to any of such commodities, shall be fined not less than $10 or more than $1,000, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered gambling contracts, and shall be void."

Section 132 of the Criminal Code is in part as follows:

"Any person who shall, at any time or sitting, by playing at cards, dice or any other game or games, or by betting on the side or hands of such as do game, or by any wager or bet upon any race, fight, pastime, sport, lot, chance, casualty, election of unknown or contingent event whatever, lose to any person, so playing or betting, any sum of money, or other valuable thing, amounting in the whole to the sum of $10, and shall pay or deliver the same or any part thereof, the person so losing and paying or delivering the same, shall be at liberty to sue for and recover the money, goods or other valuable thing, so lost and paid or delivered, or any part thereof, or the full value of the same, by action of debt, replevin, assumpsit or trover, or proceeding in chancery, from the winner thereof, with costs, in any court of competent jurisdiction. * * * In case the person who shall lose such money or other thing, as aforesaid, shall not, within six months, really and *bona fide*, and without *covin* or collusion, sue, and with effect prosecute, for such money or other thing by him lost and paid or delivered as aforesaid, it shall be lawful for any person to sue for, and recover treble the value of the money, goods, chattels and other things, with costs of suit, by special action on the case, against such winner aforesaid; one half to use of the county, and the other to the person suing."

The provisions of section 132 do not cover the offenses mentioned in section 130. A specific penalty is provided for the misdemeanors mentioned in section 130.

A penal statute can not be extended by construction. Edwards v. Hill, 11 Ill. 22; Chicago & N. W. Ry. Co. v. Stanbro, 87 Ill. 195–197.

Penal statutes are strictly construed, and where suit is brought thereunder, the plaintiff, to maintain his action, must make a case clearly within the provisions of the statute he invokes. Edwards v. Hill, 11 Ill. 22.

Section 132 deals with games, amusements, things regarded as sport, which are innocent if nothing be wagered thereon, which are unconnected with business, and out of which no agreement arises unless there be betting upon the result.

Section 130 renders unlawful a class of agreements before then innocent, and declares that all option contracts for grain, stock or other commodities, shall be considered gambling contracts and void. Schneider v. Turner, 130 Ill. 28; Same, 27 Ill. App. 220; Corcoran v. Lehigh & Franklin Coal Co., 37 Ill. App. 577.

Many such contracts were, before the enactment of this statute, entered into in the ordinary course of business, with no thought of sport or gambling; these are now illegal, but if carried out, one is not liable to be sued and compelled to pay three times the amount he may have paid over in satisfaction of the gambling contract.

The judgment of the Circuit Court is affirmed.